UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------- x

UNITED STATES OF AMERICA                    :        Criminal No.

                                            :        Filed:

         v.                                 :        Violation:  15 U.S.C. § 1

RIVERSIDE SEAT COMPANY,
WOODBRIDGE FOAM FABRICATING,                :
INC.; and SW FOAM LLC,
                                            :

                    Defendants.

-------------------------------------------------------- x

### PLEA AGREEMENT

The United States of America and Riverside Seat Company ("Riverside"); Woodbridge

Foam Fabricating, Inc. ("WFFI"); and SW Foam LLC ("SW"); (collectively, "defendants"),

entities organized and existing under the laws of Missouri, Tennessee, and Texas, hereby enter

into the following Plea Agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal

Procedure ("Fed. R. Crim. P."):

### RIGHTS OF DEFENDANTS

1.      The defendants understand their rights:

        (a)     to be represented by an attorney;

        (b)     to be charged by Indictment;

        (c)     to plead not guilty to any criminal charge brought against them;

        (d)     to have a trial by jury, at which they would be presumed not guilty of the

charge and the United States would have to prove every essential element of the charged offense

beyond a reasonable doubt for them to be found guilty;

        (e)     to confront and cross-examine witnesses against them and to subpoena

witnesses in their defense at trial;

COURT'S
EXHIBIT NO. 2
IDENTIFICATION/EVIDENCE
DKT.#
DATE: 6-27-14
PENGAD 800-631-6989

(f)    to appeal their conviction if they are found guilty; and

(g)    to appeal the imposition of sentence against them.

### AGREEMENT TO PLEAD GUILTY AND WAIVE CERTAIN RIGHTS

2.     The defendants knowingly and voluntarily waive the rights set out in Paragraph 1(b)-(f) above. The defendants also knowingly and voluntarily waive any objection or defense they may have to the prosecution of the charged offense in the United States District Court for the Eastern District of New York based on venue. The defendants also knowingly and voluntarily waive the right to file any appeal, any collateral attack, or any other writ or motion, including but not limited to an appeal under 18 U.S.C. § 3742, that challenges the sentence imposed by the Court if that sentence is consistent with or below the recommended sentence in Paragraph 9 of this Plea Agreement, regardless of how the sentence is determined by the Court. This agreement does not affect the rights or obligations of the United States as set forth in 18 U.S.C. § 3742(b)-(c). Nothing in this paragraph, however, will act as a bar to the defendants perfecting any legal remedies they may otherwise have on appeal or collateral attack respecting claims of ineffective assistance of counsel or prosecutorial misconduct. The defendants agree that there is currently no known evidence of ineffective assistance of counsel or prosecutorial misconduct. Pursuant to Fed. R. Crim. P. 7(b), the defendants will waive indictment and plead guilty to a one-count Information to be filed in the United States District Court for the Eastern District of New York. The Information will charge the defendants with participating in a conspiracy to suppress and eliminate competition by fixing prices to customers of polyurethane flexible slab stock automotive foam sold in the United States and elsewhere, from at least as early as June 9, 2008 through at least April 20, 2009, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.

2

3.    The defendants, pursuant to the terms of this Plea Agreement, will plead guilty to the criminal charge described in Paragraph 2 above and will make a factual admission of guilt to the Court in accordance with Fed. R. Crim. P. 11, as set forth in Paragraph 4 below.

## FACTUAL BASIS FOR OFFENSE CHARGED

4.    Had this case gone to trial, the United States would have presented evidence sufficient to prove the following facts:

(a)    For purposes of this Plea Agreement, the "relevant period" is that period from June 9, 2008 through April 20, 2009. During the relevant period, the defendants were organized as follows. Riverside was a limited liability company organized and existing under the laws of Missouri with its principal place of business in Riverside, Missouri. Riverside was wholly owned by Woodbridge Holdings Inc. WFFI was a corporation organized and existing under the laws of Tennessee with its principal place of business in Chattanooga, Tennessee. WFFI was owned by Woodbridge Holdings Inc. (80%) and INOAC Corporation (20%). SW was a limited liability company organized and existing under the laws of Texas with its principal place of business in El Paso, Texas. SW was owned by Brunswick Seat Company (50%) (which was owned by Woodbridge Holdings Inc.) and Inoac North America, LLC (50%).

(b)    During the relevant period, the defendants were producers of and engaged in the sale of polyurethane flexible slab stock automotive foam. Polyurethane flexible slab stock automotive foam is a low-density, slab stock, flexible foam used as a component of automotive interior parts, such as seat covers, headliners, headrests, door panels, and armrests, and excludes any molded, semi-rigid, rigid, and high-density foam. Polyurethane flexible slab stock automotive foam, as defined and used in this Plea Agreement, includes only the foam itself and does not include any automotive parts in which such foam may be a component.

3

(c)     During the relevant period, the defendants were engaged in the sale of polyurethane flexible slab stock automotive foam in the United States and elsewhere and employed 200 or more individuals.  During the relevant period, the defendants' sales of polyurethane flexible slab stock automotive foam affecting U.S. customers totaled at least $36.6 million.

(d)     During the relevant period, the defendants, through their directors, officers, and employees, including high-level personnel of the defendants, participated in a conspiracy with their co-conspirators, as set forth in the accompanying Information, the primary purpose of which was to suppress and eliminate competition by fixing prices to customers of polyurethane flexible slab stock automotive foam sold in the United States and elsewhere, from at least as early as June 9, 2008 through at least April 20, 2009.  In furtherance of the conspiracy, the defendants, through their directors, officers, and employees, engaged in discussions and attended meetings with representatives of their co-conspirators.  During these discussions and meetings, agreements were reached to fix prices on polyurethane flexible slab stock automotive foam to be sold in the United States and elsewhere.

(e)     During the relevant period, polyurethane flexible slab stock automotive foam sold by one or more of the conspirator firms, and equipment and supplies necessary to produce and distribute polyurethane flexible slab stock automotive foam, as well as payments for polyurethane flexible slab stock automotive foam, traveled in interstate and foreign commerce. The business activities of the defendants and their co-conspirators in connection with the production and sale of polyurethane flexible slab stock automotive foam that were the subjects of this conspiracy were within the flow of, and substantially affected, interstate and foreign trade and commerce.

4

## ELEMENTS OF THE OFFENSE

5.     The elements of the charged offense are:

(a)     the conspiracy described in the Information existed at or about the time alleged;

(b)     the defendant knowingly became a member of the conspiracy; and

(c)     the conspiracy described in the Information either substantially affected interstate commerce in goods or services or occurred within the flow of interstate commerce in goods and services.

## POSSIBLE MAXIMUM SENTENCE

6.     The defendants understand that the statutory maximum penalty that may be imposed against each of them upon conviction for a violation of Section One of the Sherman Antitrust Act is a fine in an amount equal to the greatest of:

(a)     $100 million (15 U.S.C. § 1);

(b)     twice the gross pecuniary gain the conspirators derived from the crime (18 U.S.C. § 3571(c) and (d)); or

(c)     twice the gross pecuniary loss caused to the victims of the crime by the conspirators (18 U.S.C. § 3571(c) and (d)).

7.     In addition, the defendants understand that:

(a)     pursuant to 18 U.S.C. § 3561(c)(1), the Court may impose a term of probation of at least one year, but not more than five years, against each of them;

(b)     pursuant to §8B1.1 of the United States Sentencing Guidelines ("U.S.S.G.," "Sentencing Guidelines," or "Guidelines") or 18 U.S.C. § 3563(b)(2) or

5

§ 3663(a)(3), the Court may order each of them to pay restitution to the victims of the offense; and

(c)     pursuant to 18 U.S.C. § 3013(a)(2)(B), the Court is required to order each of the defendants to pay a $400 special assessment, totaling $1,200, upon conviction for the charged crime.

## SENTENCING GUIDELINES

8.     The defendants understand that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider, in determining and imposing sentence, the Guidelines Manual in effect on the date of sentencing unless that Manual provides for greater punishment than the Manual in effect on the last date that the offense of conviction was committed, in which case the Court must consider the Guidelines Manual in effect on the last date that the offense of conviction was committed.  The parties agree there is no *ex post facto* issue under the November 1, 2013 Guidelines Manual.  The Court must also consider the other factors set forth in 18 U.S.C. § 3553(a) in determining and imposing sentence.  The defendants understand that the Guidelines determinations will be made by the Court by a preponderance of the evidence standard.  The defendants understand that although the Court is not ultimately bound to impose a sentence within the applicable Guidelines range, its sentence must be reasonable based upon consideration of all relevant sentencing factors set forth in 18 U.S.C. § 3553(a).

## SENTENCING AGREEMENT

9.     Pursuant to Fed. R. Crim. P. 11(c)(1)(C), and subject to the full, truthful, and continuing cooperation of the defendants and their Related Entities, as defined in Paragraph 13 of this Plea Agreement, the United States and the defendants agree that the appropriate

6

disposition of this case is, and agree to recommend jointly that the Court impose, a sentence requiring the defendants to pay to the United States a criminal fine of $6,148,800 (six million, one hundred forty-eight thousand, eight hundred dollars), payable in installments as set forth below with interest accruing under 18 U.S.C. § 3612(f)(1)-(2), and no order of restitution ("the recommended sentence"). The defendants and the United States agree that there exists no aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the U.S. Sentencing Commission in formulating the Sentencing Guidelines justifying a departure pursuant to U.S.S.G. §5K2.0. The defendants and the United States agree not to seek at the sentencing hearing any sentence outside of the Guidelines range nor any Guidelines adjustment for any reason that is not set forth in this Plea Agreement. The defendants and the United States further agree that the recommended sentence set forth in this Plea Agreement is reasonable. With respect to the recommended sentence, the defendants and United States further state:

> (a)     Pursuant to U.S.S.G. §8C2.5, the defendants' culpability score is 6. This number is calculated by starting with 5 points, pursuant to U.S.S.G. §8C2.5(a); adding 3 points because the unit of organization within which the offense was committed has more than 200 employees and an individual within high-level personnel of the unit participated in, condoned or was willfully ignorant of the offense, pursuant to U.S.S.G. §8C2.5(b)(3)(B); and subtracting 2 points because the defendants fully cooperated in the investigation and clearly demonstrated recognition and affirmative acceptance of responsibility for their criminal conduct, pursuant to U.S.S.G. §8C2.5(g)(2). Accordingly, the minimum multiplier to be applied to the base fine is 1.2 and the maximum multiplier is 2.4, pursuant to U.S.S.G. §8C2.6.

7

(b)     The base fine is 20% of the volume of commerce, pursuant to U.S.S.G. §2R1.1(d)(1) and §8C2.4(a) and (b).  The parties agree that the affected volume of commerce attributable to the defendants for purposes of the Information is approximately $36.6 million. Applying the multipliers of 1.2 and 2.4 to the base fine, the fine range is between $8,784,000 and $17,568,000, pursuant to U.S.S.G. §8C2.6.

(c)     The United States and the defendants agree to recommend, in the interest of justice pursuant to 18 U.S.C. § 3572(d)(1) and U.S.S.G. §8C3.2(b), that the fine of $6,148,800 be allocated as follows among the defendants:

i.      Riverside will pay a total fine of $2,851,182.00, plus any accrued interest, in five equal installments of $570,237.00 (except that the fifth and final installment will be $570,234.00) and will make the first installment payment within 15 days after the date on which a court imposes sentence on defendants on the charge set forth in the accompanying Information ("Sentencing Date"); the second installment payment (plus any accrued interest) by the one-year anniversary of the Sentencing Date; the third installment payment (plus any accrued interest) by the two-year anniversary of the Sentencing Date; the fourth installment payment (plus any accrued interest) by the three-year anniversary of the Sentencing Date; and the fifth and final installment payment (plus any accrued interest) by the four-year anniversary of the Sentencing Date;

ii.     WFFI will pay a total fine of $1,789,055.00, plus any accrued interest, in five equal installments of $357,811.00 and will make the first installment payment within 15 days after the Sentencing Date; the second installment payment (plus any accrued interest) by the first anniversary of the Sentencing Date; the third installment payment (plus any accrued interest) by the two-year anniversary of the Sentencing Date; the fourth installment

8

payment (plus any accrued interest) by the three-year anniversary of the Sentencing Date; and the fifth and final installment payment (plus any accrued interest) by the four-year anniversary of the Sentencing Date; and

        iii.      SW will pay a total fine of $1,508,563.00, plus any accrued interest, in five equal installments of $301,713.00 (except the fifth and final installment will be $301,711.00) and will make the first installment payment within 15 days after the Sentencing Date; the second installment payment (plus any accrued interest) by the one-year anniversary of the Sentencing Date; the third installment payment (plus any accrued interest) by the two-year anniversary of the Sentencing Date; the fourth installment payment (plus any accrued interest) by the three-year anniversary of the Sentencing Date; and the fifth and final installment payment (plus any accrued interest) by the four-year anniversary of the Sentencing Date.

Each defendant, however, at any time before its final installment due date, will have the option of prepaying the remaining balance (plus any accrued interest) then owing on its portion of the fine.

(d)      The defendants understand that the Court will order each of them to pay a $400 special assessment totaling $1,200, pursuant to 18 U.S.C. § 3013(a)(2)(B), in addition to any fine imposed.

(e)      The United States may recommend that the Court order a term of probation.  The defendants may recommend that no term of probation be imposed.  The United States and the defendants understand that the Court's decision regarding the imposition of probation will not void this Plea Agreement.

(f)      In light of the availability of civil causes of action, including the pending suit captioned *In re Polyurethane Foam Antitrust Litigation*, 10-md-2196 (N.D. Ohio), which

9

potentially provide for a recovery of a multiple of actual damages, the recommended sentence does not include a restitution order for the offense charged in the Information.

10.     The United States and the defendants agree that the applicable Guidelines fine range exceeds the fine contained in the recommended sentence set out in Paragraph 9 above. Subject to the full, truthful, and continuing cooperation of the defendants and their Related Entities, as defined in Paragraph 13 of this Plea Agreement, and prior to sentencing in this case, the United States agrees that it will make a motion, pursuant to U.S.S.G. §8C4.1, for a downward departure from the Guidelines fine range and will request that the Court impose the recommended sentence set out in Paragraph 9 of this Plea Agreement because of the defendants' and their Related Entities' substantial assistance in the government's investigation and prosecutions of violations of federal criminal law in the polyurethane flexible slab stock automotive foam industry.

11.     Subject to the full, truthful, and continuing cooperation of the defendants and their Related Entities, as defined in Paragraph 13 of this Plea Agreement, and prior to sentencing in this case, the United States will fully advise the Court and the Probation Office of the fact, manner, and extent of the defendants' and their Related Entities' cooperation and their commitment to prospective cooperation with the United States' investigation and prosecutions, all material facts relating to the defendants' involvement in the charged offense, and all other relevant conduct.

12.     The United States and the defendants understand that the Court retains complete discretion to accept or reject the recommended sentence provided for in Paragraph 9 of this Plea Agreement.

(a)     If the Court does not accept the recommended sentence, the United States and the defendants agree that this Plea Agreement, except for Paragraph 12(b) below, will be rendered void.

(b)     If the Court does not accept the recommended sentence, the defendants will be free to withdraw their guilty plea (Fed. R. Crim. P. 11(c)(5) and (d)). If the defendants withdraw their plea of guilty, this Plea Agreement, the guilty plea, and any statement made in the course of any proceedings under Fed. R. Crim. P. 11 regarding the guilty plea or this Plea Agreement or made in the course of plea discussions with an attorney for the government will not be admissible against the defendants in any criminal or civil proceeding, except as otherwise provided in Fed. R. Evid. 410. In addition, the defendants agree that, if they withdraw their guilty plea pursuant to this subparagraph of this Plea Agreement, the statute of limitations period for any offense referred to in Paragraph 15 of this Plea Agreement will be tolled for the period between the date of the signing of this Plea Agreement and the date the defendants withdrew their guilty plea or for a period of sixty (60) days after the date of the signing of this Plea Agreement, whichever period is greater.

## COOPERATION BY DEFENDENTS AND RELATED ENTITIES

13.     For the purposes of this Plea Agreement, the defendants' Related Entities are Woodbridge Foam Corporation; Woodbridge North America, Inc.; Woodbridge Holdings, Inc.; Woodbridge Sales & Engineering, Inc.; Brunswick Seat Company (as well as Woodbridge Ventures, Inc., which merged with Brunswick Seat Company effective October 31, 2009); T.W. Lamination LLC; Springfield Interior Trim LLC; El Paso Lamination LLC; Saltillo Lamination, S.A. de C.V.; Olympic Products LLC ("Olympic"), but only with respect to the portion of Olympic's business relating to the manufacture or sale of polyurethane flexible slab stock

11

automotive foam; INOAC Corporation; and Inoac North America LLC.  Related Entities do not include any independent contractor of any of the defendants or their Related Entities, nor any affiliates, joint venture partners, or subsidiaries of any of the defendants or their Related Entities not expressly mentioned in this paragraph.  The defendants and their Related Entities will cooperate fully and truthfully with the United States in the prosecution of this case; the current federal investigation of violations of federal antitrust and related criminal laws involving the manufacture or sale of polyurethane flexible slab stock automotive foam, as described in the accompanying Information; any federal investigation resulting therefrom; and any litigation or other proceedings arising or resulting from any such investigation to which the United States is a party ("Federal Proceeding").  Federal Proceeding includes, but is not limited to, an investigation, prosecution, litigation, or other proceeding regarding obstruction of, the making of a false statement or declaration in, the commission of perjury or subornation of perjury in, the commission of contempt in, or conspiracy to commit such offenses in, a Federal Proceeding.  The full, truthful, and continuing cooperation of the defendants and their Related Entities will include, but not be limited to:

       (a)     producing to the United States all documents, information, and other materials, wherever located, not protected under the attorney-client privilege or the work-product doctrine, in the possession, custody, or control of the defendants or any of their Related Entities, requested by the United States in connection with any Federal Proceeding, which shall be deemed responsive to outstanding grand jury subpoenas issued to the defendants or any of their Related Entities, and

       (b)     using their best efforts to secure the full, truthful, and continuing cooperation (as defined in Paragraph 14 below) of current and former directors, officers, and

employees of the defendants or any of their Related Entities, as may be requested by the United States, but excluding individuals named in Attachment A filed under seal, including making these persons available in the United States and other mutually agreed-upon locations at the defendants' expense, for interviews and the provision of testimony in grand jury, trial, and other judicial proceedings in connection with any Federal Proceeding. Also excluded from the cooperation obligations of this subparagraph and Paragraph 14 are any current or former independent contractor of any of the defendants or their Related Entities; any current or former director, officer, or employee of any independent contractor of any of the defendants or their Related Entities; and any current or former director, officer, employee, or independent contractor of Olympic who was not engaged in the manufacture or sale of polyurethane flexible slab stock automotive foam for Olympic, or any current or former director, officer, or employee of any such independent contractor. Current directors, officers, and employees are defined for purposes of this Plea Agreement as individuals who are directors, officers, or employees of any of the defendants or any of their Related Entities as of the date of signature of this Plea Agreement.

14.     The full, truthful, and continuing cooperation of the individuals described in Paragraph 13(b) above will include, but not be limited to:  (a) producing in the United States and at other mutually agreed-upon locations all documents, including claimed personal documents and other materials, wherever located, not protected under the attorney-client privilege or the work-product doctrine, that are requested by attorneys and agents of the United States in connection with any Federal Proceeding; (b) making himself or herself available for interviews in the United States and at other mutually agreed-upon locations, not at the United States' expense, upon the request of attorneys and agents of the United States in connection with any Federal Proceeding; (c) responding fully and truthfully to all inquiries of the United States in

13

connection with any Federal Proceeding, without falsely implicating any person or intentionally withholding any information, subject to the penalties of making false statements or declarations (18 U.S.C. §§ 1001, 1623), obstruction of justice (18 U.S.C. § 1503, *et seq.*), or conspiracy to commit such offenses; (d) otherwise voluntarily providing the United States with any material or information not requested in (a) - (c) of this paragraph and not protected under the attorney-client privilege or the work-product doctrine that he or she may have that is related to any Federal Proceeding; (e) when called upon to do so by the United States in connection with any Federal Proceeding, testifying in grand jury, trial, and other judicial proceedings in the United States fully, truthfully, and under oath, subject to the penalties of perjury (18 U.S.C. § 1621), making false statements or declarations in grand jury or court proceedings (18 U.S.C. § 1623), contempt (18 U.S.C. §§ 401-402), and obstruction of justice (18 U.S.C. § 1503, *et seq.*); and (f) agreeing that, if the agreement not to prosecute him or her in this Plea Agreement is rendered void under Paragraph 16(c), the statute of limitations period for any Relevant Offense, as defined in Paragraph 16(a), shall be tolled as to him or her for the period between the date of the signing of this Plea Agreement and six (6) months after the date that the United States gave notice of its intent to void its obligations to that person under this Plea Agreement.

## GOVERNMENT'S AGREEMENT

15.     Subject to the full, truthful, and continuing cooperation of the defendants and their Related Entities, as defined in Paragraph 13 of this Plea Agreement, and upon the Court's acceptance of the guilty plea called for by this Plea Agreement and the imposition of the recommended sentence, the United States agrees that it will not bring further criminal charges against the defendants, or criminal charges against their Related Entities, for any act or offense committed before the date of signature of this Plea Agreement that was undertaken in furtherance

14

of the antitrust conspiracy involving the manufacture or sale of polyurethane flexible slab stock automotive foam, as described in the accompanying Information. The non-prosecution terms of this paragraph do not apply to (a) any acts of subornation of perjury (18 U.S.C. § 1622), making a false statement (18 U.S.C. § 1001), obstruction of justice (18 U.S.C. § 1503, *et seq.*), contempt (18 U.S.C. §§ 401-402), or conspiracy to commit such offenses; (b) civil matters of any kind; (c) any violation of the federal tax or securities laws or conspiracy to commit such offenses; (d) any crime of violence; or (e) any antitrust conspiracy involving any type of foam other than polyurethane flexible slab stock automotive foam.

16.   The United States further agrees to the following:

(a)   Upon the Court's acceptance of the guilty plea called for by this Plea Agreement and the imposition of the recommended sentence and subject to the exceptions noted in Paragraph 16(f) below, the United States agrees that it will not bring criminal charges against any current or former director, officer, or employee of the defendants or their Related Entities for any act or offense committed before the date of signature of this Plea Agreement and while that person was acting as a director, officer, or employee of the defendants or their Related Entities that was undertaken in furtherance of the antitrust conspiracy involving the manufacture or sale of polyurethane flexible slab stock automotive foam, as described in the accompanying Information ("Relevant Offense") except that the protections granted in this paragraph shall not apply to the individuals named in Attachment A, filed under seal; any current or former independent contractor of any of the defendants or their Related Entities; any current or former director, officer, or employee of any independent contractor of any of the defendants or their Related Entities; or any current or former director, officer, employee, or independent contractor of Olympic who was not engaged in the manufacture or sale of polyurethane flexible slab stock

automotive foam for Olympic, or any current or former director, officer, or employee of any such independent contractor.

(b)    Should the United States determine that any current or former director, officer, or employee of the defendants or their Related Entities may have information relevant to any Federal Proceeding, the United States may request that person's cooperation under the terms of this Plea Agreement by written request delivered to counsel for the individual (with a copy to the undersigned counsel for the defendants) or, if the individual is not known by the United States to be represented, to the undersigned counsel for the defendants.

(c)    If any person requested to provide cooperation under Paragraph 16(b) fails to comply fully with his or her obligations under Paragraph 14, then the terms of this Plea Agreement as they pertain to that person, and the agreement not to prosecute that person granted in this Plea Agreement, shall be rendered void and the United States may prosecute such person criminally for any federal crime of which the United States has knowledge, including but not limited to any Relevant Offense.

(d)    Except as provided in Paragraph 16(e) below, information provided by a person described in Paragraph 16(b) to the United States under the terms of this Plea Agreement pertaining to any Relevant Offense, or any information directly or indirectly derived from that information, may not be used against that person in a criminal case, except in a prosecution for perjury or subornation of perjury (18 U.S.C. §§ 1621-22), making a false statement or declaration (18 U.S.C. §§ 1001, 1623), obstruction of justice (18 U.S.C. § 1503, *et seq.*), contempt (18 U.S.C. §§ 401-402), or conspiracy to commit such offenses.

(e)    If any person who provides information to the United States under this Plea Agreement fails to comply fully with his or her obligations under Paragraph 14 of this Plea

16

Agreement, the agreement in Paragraph 16(d) above not to use that information or any information directly or indirectly derived from it against that person in a criminal case shall be rendered void.

(f)     The non-prosecution terms of Paragraph 16 do not apply to civil matters of any kind; any violation of the federal tax or securities laws, or conspiracy to commit such offenses; any crime of violence; perjury or subornation of perjury (18 U.S.C. §§ 1621-22), making a false statement or declaration (18 U.S.C. §§ 1001, 1623), obstruction of justice (18 U.S.C. § 1503, *et seq.*), contempt (18 U.S.C. §§ 401-402), or conspiracy to commit such offenses; or any antitrust conspiracy involving any type of foam other than polyurethane flexible slab stock automotive foam.

(g)     Documents provided under Paragraph 14(a) will be deemed responsive to outstanding grand jury subpoenas issued to the defendants or any of their Related Entities.

17.     The United States agrees that when any person travels to the United States for interviews, grand jury appearances, or court appearances pursuant to this Plea Agreement, or for meetings with counsel in preparation therefor, the United States will take no action, based upon any Relevant Offense, to subject such person to arrest, detention, or service of process, or to prevent such person from departing the United States. This paragraph does not apply to an individual's commission of perjury or subornation of perjury (18 U.S.C. §§ 1621-22), making false statements (18 U.S.C. § 1001), making false statements or declarations in grand jury or court proceedings (18 U.S.C. § 1623), obstruction of justice (18 U.S.C. § 1503, *et seq.*), contempt (18 U.S.C. §§ 401-402), or conspiracy to commit such offenses.

18.     The defendants understand that they may be subject to suspension or debarment action by federal or state agencies other than the United States Department of Justice, Antitrust

Division, based upon the convictions resulting from this Plea Agreement, and that this Plea Agreement in no way controls whatever action, if any, other agencies may take. However, the Antitrust Division agrees that, if requested, it will advise the appropriate officials of any government agency considering such action of the fact, manner, and extent of the cooperation of the defendants and their Related Entities as a matter for that agency to consider before determining what action, if any, to take. The defendants nevertheless affirm that they want to plead guilty regardless of any suspension or debarment consequences of their pleas.

### REPRESENTATION BY COUNSEL

19.     The defendants have been represented by counsel and are fully satisfied that their attorneys have provided competent legal representation. Each of the defendants has thoroughly reviewed this Plea Agreement and each acknowledges that counsel has advised it of the nature of the charge, any possible defenses to the charge, and the nature and range of possible sentences.

### VOLUNTARY PLEA

20.     The defendants' decision to enter into this Plea Agreement and tender pleas of guilty is freely and voluntarily made and is not the result of force, threats, assurances, promises, or representations other than the representations contained in this Plea Agreement and Attachment A. The United States has made no promises or representations to the defendants as to whether the Court will accept or reject the recommendations contained within this Plea Agreement.

### VIOLATION OF PLEA AGREEMENT

21.     The defendants agree that, if the United States determines in good faith, during the period that any Federal Proceeding is pending, that any of the defendants or their Related Entities have failed to provide full, truthful, and continuing cooperation, as defined in Paragraph

18

13 of this Plea Agreement, or have otherwise violated any provision of this Plea Agreement, the United States will notify counsel for the defendants in writing by personal or overnight delivery, email, or facsimile transmission and may also notify counsel by telephone of its intention to void any of its obligations under this Plea Agreement (except its obligations under this paragraph), and the defendants and their Related Entities shall be subject to prosecution for any federal crime of which the United States has knowledge including, but not limited to, the substantive offenses relating to the investigation resulting in this Plea Agreement. The defendants agree that, in the event that the United States is released from its obligations under this Plea Agreement and brings criminal charges against the defendants or their Related Entities for any offense referred to in Paragraph 15 of this Plea Agreement, the statute of limitations period for such offense shall be tolled for the period between the date of the signing of this Plea Agreement and six (6) months after the date the United States gave notice of its intent to void its obligations under this Plea Agreement.

22.     The defendants understand and agree that in any further prosecution of them or their Related Entities resulting from the release of the United States from its obligations under this Plea Agreement, because of the defendants' or their Related Entities' violation of this Plea Agreement, any documents, statements, information, testimony, or evidence provided by them, their Related Entities, or current or former directors, officers, or employees of them or their Related Entities to attorneys or agents of the United States, federal grand juries, or courts, and any leads derived therefrom, may be used against them or their Related Entities in any such further prosecution. In addition, the defendants unconditionally waive their right to challenge the use of such evidence in any such further prosecution, notwithstanding the protections of Fed. R. Evid. 410.

19

## ENTIRETY OF AGREEMENT

23.     This Plea Agreement and Attachment A constitute the entire agreement between the United States and the defendants concerning the disposition of the criminal charges in this case.  This Plea Agreement cannot be modified except in writing, signed by the United States and the defendants.

24.     The undersigned is authorized to enter this Plea Agreement on behalf of the defendants as evidenced by the Resolutions of the Boards of Directors of the defendants attached to, and incorporated by reference in, this Plea Agreement.

20

25.     The undersigned attorneys for the United States have been authorized by the

Attorney General of the United States to enter this Plea Agreement on behalf of the United

States.

Dated:  April 25th, 2014

AGREED TO BY:


Riverside Seat Company                          United States of America

By: _____              By: _____
    Roland Deschamps                                 Steven Tugander
    General Counsel                                      Carrie A. Syme
                                                              Trial Attorneys
                                                              Antitrust Division
Woodbridge Foam Fabricating, Inc. and SW         U.S. Department of Justice
Foam LLC                                                26 Federal Plaza, Room 3630
                                                              New York, NY 10278
By: _____              Tel: (212) 335-8032
    Michael A. Simpson                              Fax: (212) 335-8021
    General Manager                                 Email:  steven.tugander@usdoj.gov


Counsel for the above parties

By: _____
    Daniel G. Swanson
    Cynthia E. Richman
    Gibson, Dunn & Crutcher LLP

21

25.    The undersigned attorneys for the United States have been authorized by the

Attorney General of the United States to enter this Plea Agreement on behalf of the United

States.

Dated:  April _____, 2014


AGREED TO BY:


Riverside Seat Company                        United States of America

By: _____        By: _____
        Roland Deschamps                                Steven Tugander
        General Counsel                                     Carrie A. Syme
                                                                    Trial Attorneys
                                                                    Antitrust Division
Woodbridge Foam Fabricating, Inc. and SW      U.S. Department of Justice
Foam LLC                                                   26 Federal Plaza, Room 3630
                                                                   New York, NY 10278
By: _____        Tel: (212) 335-8032
        Michael A. Simpson                          Fax: (212) 335-8021
        General Manager                               Email:  steven.tugander@usdoj.gov


Counsel for the above parties

By: _____
        Daniel G. Swanson
        Cynthia E. Richman
        Gibson, Dunn & Crutcher LLP